THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JULIAN HARDY, Appellant. [775 NYS2d 322]—

Appeal by the defendant from a judgment of the Supreme Court, Kings County (Brennan, J.), rendered April 29, 2002, convicting him of criminal possession of a controlled substance in the third degree, criminal possession of a weapon in the fourth degree (three counts), and criminal possession of marijuana in the fifth degree, upon a jury verdict, and imposing sentence. The appeal brings up for review the denial, after a hearing (Douglass, J.), of that branch of the defendant's omnibus motion which was to suppress physical evidence and his statements to law enforcement authorities.

Ordered that the judgment is affirmed.

On the basis of information that the defendant was selling drugs from his apartment, emergency services police officers executed a search warrant, secured the premises, and handcuffed the defendant. When investigating detectives entered the defendant's bedroom, they asked him, in effect, whether there was anything in the room they should know about. The defendant, either verbally or by gesture, directed the detectives to the bedroom dresser. On the dresser top, they observed money, drugs, and drug paraphernalia. Two handguns were found in a dresser drawer. Additional drugs and drug paraphernalia were found elsewhere in the apartment.

The defendant contends, inter alia, that the Supreme Court erred in denying that branch of his motion which was to suppress the guns located in the dresser as the product of a custodial interrogation without the benefit of *Miranda* warnings (*see Miranda v Arizona,* 384 US 436 [1966]). Contrary to the People's assertions, we are not persuaded that this was the type of brief, crime-scene inquiry that may be conducted without the administration of *Miranda* warnings to enable police to ascertain transpiring events (*see Matter of Rennette B.,* 281 AD2d 78 [2001]). Indeed, the defendant was restrained, and the detectives' inquiry was not designed to clarify the situation but to elicit the defendant's inculpatory cooperation (*see People v Bastian,* 294 AD2d 882 [2002]; *People v Rifkin,* 289 AD2d 262 [2001]; *People v Santarelli,* 268 AD2d 603 [2000]; *cf. People v Maldonado,* 184 AD2d 590 [1992]). Nevertheless, suppression of the physical evidence recovered from the dresser was not required. The detectives were in the premises of a known drug dealer to execute a search warrant. Notwithstanding that the inculpatory cooperation of the defendant, directing the detectives to the dresser, was obtained in violation of his constitutional rights, the guns recovered from the dresser were properly received in evidence pursuant to the inevitable discovery exception to the exclusionary rule as the People established a very high degree of probability that the evidence in question would have been obtained independently of the tainted source (*see People v Binns,* 299 AD2d 651 [2002]; *People v Brown,* 259 AD2d 985 [1999]; *People v Watson,* 188 AD2d 501 [1992]). Furthermore, in light of the overwhelming evidence of the defendant's guilt, the admission of the defendant's inculpatory response to the detective's inquiry was harmless error (*see People v Bastian, supra; People v Rifkin, supra; People v Santarelli, supra*).

The defendant's remaining contentions are without merit. Altman, J.P., S. Miller, Krausman and Cozier, JJ., concur.